MEMORANDUM OF DECISION
This is an action for termination of parental rights instituted by the Department of Children and Families (DCF) on January 18, 1996 at the Superior Court for Juvenile Matters in Hartford. The case was subsequently transferred to the Child CT Page 5828 Protection Session.
Jasmin J. was born on June 4, 1994 at the University of Connecticut Medical Center. Jasmin weighed 3 lbs. 15 oz., she was growth retarded and was 31 weeks in gestation. The mother was not cooperative with substance abuse treatment during her hospital stay. The Department sought and obtained an order of temporary custody based upon her cocaine addiction at the time of the child's birth and her long history of DCF involvement with the family. Jasmin was committed to DCF as a neglected child on October 21, 1994.
Jasmin has one full brother, fathered by Millard J., and four half-brothers and a half-sister who were fathered by another man. None of these children are presently with their common biological mother, Carolyn. The father of the half-brothers and sister is actively dying from a "life threatening disease." Jasmin's father, Millard, and mother, Carolyn, are both presently incarcerated here in Connecticut and are the respondents in this action. They were both in attendance at the contested hearing. Each was well represented by counsel, as was the child.
Carolyn has had numerous arrests and convictions going back to 1970 when she was arrested for aggravated assault. She subsequently pled to a reduced charge and received a sentence of three months, execution suspended with one year probation. In 1976 she was arrested for larceny 2, pled to larceny 3 and received 120 days execution suspended one year probation. Other arrests occurred in 1977, 1988, 1989, 1990 (three separate arrests), 1991, 1992 and three arrests in 1994. The charges against Carolyn included conspiracy, many larcenies, interfering with a police officer, possession of narcotics, violations of probation, breach of peace, weapons in motor vehicle, failure to appear in court, sale of drugs, sale of narcotics near a school, risk of injury to minors, prostitution and various assaults.
Mr. Millard J., Jasmin's biological male parent, has an equally impressive arrest record in Connecticut. He was born in Tennessee in 1946. He reported that he was raised in Detroit, Michigan. In 1987, the first year of his arrests in Connecticut, he was arrested for operating a drug factory, possession of narcotics and sale of drugs. He pled to possession and received five years execution suspended after two years and a $500 fine. In 1991 he was again arrested for a multitude of drug related charges, he pled to possession and received a sentence of four CT Page 5829 years, sentence suspended after two years and probation for two years. He has had arrests in 1993, 1994, 1995 and 1996.
As indicated earlier, both biological parents are incarcerated. Carolyn is at Niantic Correctional Center where she began a two and a half year sentence on February 16, 1996. The child's father is at Cybulski Correctional Center where he is serving a three year sentence which was imposed on January 3, 1996. Neither parent is a candidate for release in the near future.
This case regrettably tracks along in the same sad, but familiar, pattern of many other such cases. In her self-reported history which Carolyn gave to the Marilyn Baker Substance Abuse Residential Program at Niantic, she reported to having begun using marijuana, alcohol and cocaine at age 15. She reported to "Peak Frequency" of cocaine and alcohol at age 40 and her last use of marijuana, alcohol and cocaine at age 41, her present age. She reports as having begun her drug habits due to marital problems, loneliness, anger and upset. She admits to having sold all her belongings and having received additional money from friends and men. The social studies which were entered into evidence reflect many attempts by DCF through the years to get Carolyn into substance abuse programs. Many admissions to in-patient and out-patient facilities were offered to her, most notably RiverEast, a partial hospitalization program offered through Natchaug hospital. She persistently resisted all treatment modalities. She was offered this year, while she was incarcerated at Niantic, her last and best hope for reform.
The Marilyn Baker House Program at Niantic Correctional Center is described as an holistic, intensive approach to substance abuse treatment. It requires seven days a week from 7 a.m. to 9:30 p. m. It is a voluntary program. The highest classification of participants is T-4. To be in this category, a person had to:
1) be a chronic and long-term substance abuser;
2) have abused alcohol or drugs for more than 2 years;
3) have had at least one other unsuccessful treatment;
4) have been medically detoxed for substance abuse at least twice; CT Page 5830
5) and have a substance abuse problem that has disrupted at least two major life areas, for example, legal problems, criminal problems, marriages, employment etc.
Carolyn easily qualified for this program and was accepted into it. Kathleen Mayer, a program director from Niantic, testified regarding this program. She indicated that only 27% of the persons who complete the program return to custody. She reported that 67% of those who do not complete the program return to custody. She further indicated that addiction is singularly considered to be a life threatening matter and as such is the most important issue to be addressed. Parenting training is an important goal, but is subsumed by the need to address the addiction problem. Carolyn did what she has repeatedly done in the past: She was admitted to the program and thereafter, quit the program. On May 9, 1996 she asked to be discharged before entering the second phase of the program. Ms. Mayer indicated that, based upon the measured outcome study, Carolyn is at substantial risk of subsequent incarceration.
Dr. David Mantell, the court-appointed evaluator, testified in court and filed a written report which was admitted in to evidence. Dr. Mantell indicated that according to her history, Carolyn picked two substance-abusing and violent men to father her children. Jasmin's father was also violent and would disappear for extended periods. Upon his return he would have jealous rages and assault Carolyn when she "went out to clubs." Dr. Mantell indicated that according to DCF records, Carolyn had been referred to DCF on 25 prior occasions due to abuse and neglect concerns. "Most of the time that I talked to the mother, she did not seem to have a sense for the significance of her confused, contradictory, and self-defeating behavior."
Robert Carini, a unit manager at the Niantic Correctional Center, testified that he is responsible for keeping disciplinary records. While at Niantic, Carolyn has had four disciplinary actions since June 6, 1996 and has been found guilty of three class B and one class C offenses. She has pending a class A flagrant disobedience matter and an additional class B violation. Mr. Carini indicated it was very unusual for an inmate to have this many violations in such a short period of time. He further indicated that the release board is certainly going to review her disciplinary record whenever she becomes eligible for release. If there are any class A violations, Carolyn would have an CT Page 5831 additional four month loss of eligibility for probation. She has been confined to quarters and lost participation in her classes. Carolyn writes to Mr. Carini nearly every day complaining about perceived injustices, complaints about medical treatment, other inmates, and "she expects a lot more than we can accommodate." She has trouble with members of the staff and trouble following directions.
From the testimony and records placed in evidence, it is very apparent that Carolyn has not personally rehabilitated herself since she is unwilling or unable to make the necessary sacrifices required for substance abuse treatment which must be resolved before she can ever be an effective parent. It is equally clear that Carolyn is hostile to the supervision and direction incident to all in-patient programs.
Both parents have been actively involved with the criminal justice system because of their substance abuse problems. Neither consistently and regularly visited with their children, except while incarcerated; neither parent has provided financial support for their children; neither parent has produced a plan for the care of any of their children; neither parent has ever actively parented Jasmin; and no parent or extended family member has ever come forward to become a placement resource for this child.
The court finds by the evidence, which is clear and convincing, that neither parent has achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. The court further finds by clear and convincing evidence that there is no ongoing parent-child relationship as defined by statute. The court finds that allowing further time to establish such parent-child relationship would be detrimental to the best interest of the child. The court finds that the grounds for the petition have existed for more than one year.
Having found that grounds exist for the termination of the parental rights, the court must analyze and make findings pursuant to § 17a-112(d), as amended, and determine whether termination of parental rights is in the best interest of the child. The court makes the following seven factual findings required by 17a-112(d):
1. Regarding the nature and timeliness of services offered by CT Page 5832 the Department of Children and Families: The court finds the Department rendered or offered the services described in the Social Study dated June 5, 1995. The parents did not avail themselves of these services. The Department offered case management services and visitation assistance. In January 1995, the DCF caseworker met with Peter Panzarella, Regional Resource Group, substance abuse specialist. They provided a letter to Carolyn with the names, addresses and phone numbers for five treatment programs. At this point Carolyn's children were all placed. She had another good opportunity for reformation and rehabilitation. She made several appointments and attended a few out-patient clinics but failed to complete any of them. Pastoral Counseling and Teamworks were two additional services offered her. She did not avail herself of any of the opportunities to resolve her problems.
2. Regarding DCF efforts for reunification pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended, and § 17a-112(b) of the General Statutes:
The court finds that the Department of Children and Families made reasonable efforts given the situation and circumstances to reunite the family and acted in accordance with federal and state law. The many services offered to both parents were unavailing. Four of Carolyn's children were placed with the paternal grandmother of three of the children. She was unwilling to take the infant, Jasmin. At no time since Jasmin's birth has Carolyn or Millard maintained sobriety long enough to secure a permanent address and provide a home for Jasmin.
3. Regarding court orders, fulfillment of obligations, expectations and service agreements: The Department, with the approval of the Court, set reasonable and realistic expectations to reunify the family. There was only minimal compliance, if any, by the mother. There was virtually no compliance or participation by the father. Neither of them has avoided further contact with the criminal justice system. Neither has maintained suitable quarters to raise the child. Prior to their incarceration, neither kept DCF aware of their address and neither of the parents visited as often as permitted by DCF.
4. Regarding significant emotional ties of the child toward parents, relatives, foster parents etc. The child has strong emotional ties with the foster family that has provided the physical, emotional, moral and educational support this child CT Page 5833 needs. The child has no positive emotional ties to the biological parents, as the child was removed from the mother at the hospital following the child's birth and her visits with the child were infrequent and irregular. The father went with the mother for a few visits. Millard did not go to any visits on his own initiative.
5. Findings regarding the age of the child: The court has considered that the child is two years old and has lived in the present placement for most of her young life. For Jasmin to wait for her biological parents to rehabilitate themselves through substance abuse treatment and to subsequently avoid further involvement with the criminal justice system, would be speculative at best and very unlikely to occur in the near future.
6. Regarding the parents' efforts to conform their conduct to the best interests of the child, considering: contact, conduct, communications and contributions, if any. The parents have not made realistic or sustained efforts to conform their conduct to even minimally acceptable parental standards. In re JuvenileAppeal (Docket No. 9489), 183 Conn. 11, 15 (1981). Giving them additional time, given their present incarceration, would not be prudent nor in the child's best interest. In re Luis C.,210 Conn. 157 (1989).
7. Acts preventing a meaningful relationship with the child by any person, foster parent, agency etc.: While the parents' means were limited, economic or geographic factors did not prevent regular, continuing contact with the child or the foster family. The principal limiting factor, was, and is, the parents' inability to remain free of substance abuses and live an orderly and organized personal existence. There is nothing in the record, including geographical, economic or institutional conduct or circumstances, to suggest that these parents have been prevented from maintaining or establishing a meaningful relationship with the child. Indeed, the parents have been offered assistance and services, which, if availed, would have led to reunification.
ORDER
The court having considered all statutory considerations and having found by clear and convincing evidence that grounds exist for termination of parental rights, further finds upon all of the facts and circumstances presented, that it is in the child's best CT Page 5834 interest to terminate the parental rights of Carolyn S. and Millard J. Sr. Accordingly, it is ordered that the parental rights of Carolyn S. and Millard J., Sr. to the child Jasmin J. are hereby terminated.
It is further ordered that the Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the purpose of securing an adoptive family or other permanent placement for said child and that the Commissioner shall file with the court, no later than ninety (90) days following the date of judgement, a written report toward such permanent placements and file such further reports as are required by state and federal law.
F. J. Foley, Judge